IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHERYLIN WILLI, SANGEETA PRABHAKAR, AND MERRI WILSON, <br><br>Plaintiffs <br><br> VS. <br><br> AMERICAN AIRLINES, INC. AND CELESTE SIMON, <br><br>Defendants. | § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:05-CV-453-Y |

**ORDER DENYING MOTION TO STRIKE AND
GRANTING MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is Defendants' Motion to Strike [doc. # 106], filed February 9, 2007, and Motion for Summary Judgment [doc. # 48], filed October 13, 2006. After consideration, the Court DENIES the motion to strike and GRANTS the motion for summary judgment.

I. BACKGROUND

Plaintiffs Sherylin Willi, Merri Wilson, and Sangeeta Prabhakar worked for defendant American Airlines, Inc. ("American"), in the southern reservations office ("the SRO") of the international-resolutions department ("the IRD"). The IRD was a very specialized department that involved assisting American's reservation agents and international travelers with customer-service issues. The IRD also handled international sales calls, issues relating to American's international frequent-flyer program, and issues regarding the tariff department. Because the reservation offices around the world used different computer reservation programs, employees in

the IRD had to be proficient in all the reservation programs. The IRD operated 24 hours a day, 7 days a week.

American had generous leave policies. Among them were employees' ability to change shifts, their ability to "flex" their time during their shifts if they arrived late or needed to leave early, and regular accrual of vacation and sick time. American also established a medical-exemption program for its employees that allowed those with chronic medical conditions, but who were not eligible for leave under the Family Medical Leave Act ("the FMLA"), to have temporary exemptions from American's attendance policy for each substantiated absence related to the chronic condition. In other words, if American certified through the medical-exemption program that an employee's medical condition was chronic, the employee was exempted from American's attendance policies. In 2000, Willi, who had multiple sclerosis and was no longer eligible for FMLA leave,[1] was approved for chronic catastrophic leave ("CCL") through the medical-exemption program and granted exemptions to the attendance policy.

After September 11, 2001, and in the wake of large financial losses, American began to eliminate jobs, combine desks and functions, and reduce salaries. The resolution departments were downsized and some functions of the departments were consolidated. As a result, the domestic-resolution department, which handled domestic sales and services, and the Spanish-resolution and executive-platinum departments were eliminated and their duties given to the IRD.

In 2003, defendant Celeste Simon became the manager of the IRD. Soon after assuming her new duties, Simon noticed a high rate of absenteeism, especially on the late-evening shifts,

---

[1] Will had not worked the required 1,250 hours during the prior 12 months.

which Willi and Prabhakar worked.  Thus, Simon began to investigate whether employees who were frequently absent should remain in the IRD or should be assigned to a less specialized department that would not be as affected by frequent absences.

Also in 2003, Dr. Thomas Bettes became the medical director of the medical-exemption program.  Because of the increasing number of employees seeking attendance exemptions under the medical-exemption program, Dr. Bettes established a uniform method of evaluating medical conditions of employees who claimed to have chronic conditions that interfered with their job duties.  Thus, in 2003, employees seeking CCL were asked to certify or re-certify their chronic conditions by providing medical records from the last 12 months and a narrative from their treating doctors.  The requests were then reviewed by a medical-review board.

In early 2003, Prabhakar, who suffered from debilitating migraine headaches, applied for CCL.  In August 2003, the medical-review board granted Prabhakar exemptions to the attendance policy for absences that were substantiated by her doctor as related to her migraine headaches.  Wilson, who had meningitis, also applied for CCL in 2003.  However, the medical-review board determined that Wilson did not have a medical condition supporting any exemption from the attendance policies.  On December 2, 2003, Wilson was told that she would have to handle each subsequent illness through the medical-exemption program, one event at a time.[2]

In December 2003, the IRD also considered whether it could accommodate Willi's and Prabhakar's permanent work restrictions in the specialized department.  Tom Donahue, the managing director of the IRD, determined that it was not operationally feasible to continue their

---

[2]Specifically, the letter to Wilson from Dr. Bettes stated that the medical-review board had been "[u]nable to assign permanent work restrictions; absences best managed by clearing through AA Medical for each subsequent sick absence." (Defs.' App. at 366.)

permanent attendance exemptions. On December 22, 2003, Simon sent letters to Willi and Prabhakar stating that their permanent medical restrictions could not be accommodated in their current positions in the IRD "due to operational requirements." (Plfs.' App. at 285-86.) Simon noted that Willi and Prabhakar had agreed to continue to work "as scheduled and be subject to the Attendance Management Policy." (Plfs.' App. at 285-86.) American offered to move Willi, Prabhakar, and Wilson to less-specialized positions. All three refused the accommodation. (Defs.' App. at 64-65, 106, 167, 318-20.) Although some were available, Willi and Prabhakar did not ask American to conduct a search for other jobs within the company. (Defs.' App. at 31, 68.) The only accommodation Willi, Prabhakar, and Wilson requested was to be reinstated to CCL and remain in their positions with the IRD. (Defs.'s App. at 105-06.)

Between February 17, 2004, when Wilson returned to full-time shifts in the IRD, and September 28, 2004, Wilson was late to work 53 times. On September 28, 2004, Simon fired Wilson for violations of the attendance policy. Wilson's grievances were denied. Willi and Prabhakar remain employed by the IRD of American.

On January 5, 2005, Willi, Prabhakar, and Wilson filed suit against American arguing that it violated the FMLA, the Americans with Disability Act ("the ADA"), and the Texas Commission on Human Rights Act ("TCHRA"). Further, Wilson alleged that Simon's actions after Wilson's termination constituted defamation and intentional infliction of emotional distress. American and Simon move for summary judgment. *See* FED. R. CIV. P. 56(b).

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

*Id.* 56(c). The party moving for summary judgment has the initial burden of demonstrating that it is entitled to a summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party need not produce evidence showing the absence of an issue of fact with respect to an issue on which the nonmovant bears the burden of proof, however. Rather, the moving party need only point out that the evidentiary documents in the record contain insufficient proof concerning an essential element of the nonmovant's claim. *See id.* at 323-25.

When the moving party has carried its summary-judgment burden, the nonmovant must go beyond the pleadings and by its own affidavits or by the depositions, answers to interrogatories, or admissions on file set forth specific facts showing that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

In making its determination on the motion, the Court must look at the full record in the case. *See* FED. R. CIV. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Nevertheless, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

### III. FMLA

American argues that Willi, Prabhakar, and Wilson do not state a viable claim under the FMLA because they were not FMLA eligible. Only eligible employees are entitled to the protections of the FMLA. *See* 29 U.S.C.A. § 2612 (West 1999). An eligible employee is one who has at least 1,250 hours of service during the 12 months before the need for leave. *See* 29 U.S.C.A. § 2611(2)(A) (West 1999); *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 382-83 (5th Cir. 1998). Willi, Prabhakar, and Wilson admit that they were not eligible for FMLA leave during the applicable two-year statute of limitations. *See* 29 U.S.C.A. § 2617(c) (West 1999). (Plfs.'s Resp. Br. at 2.) They assert, however, that the medical-exemption program was an extension of American's FMLA program, thereby estopping American from eliminating the medical-exemption program as to Willi, Prabhakar, and Wilson only. But the fact that American established a policy that defined employee-leave rights more generously than the FMLA does not create an FMLA cause of action. *See Dolese v. Office Depot, Inc.*, 231 F.3d 202, 203 & n.12 (5th Cir. 2000) (per curiam); *see also* 29 C.F.R. § 825.700(a). American is entitled to summary judgment as to Plaintiffs' FMLA claim.

### IV. ADA AND TCHRA

Both the ADA and the TCHRA prohibit discrimination in employment based on an individual's disability. *See* 42 U.S.C.A. § 12101-12117 (West 2005); TEX. LAB. CODE ANN. § 21.051 (Vernon 2006). Because Texas courts rely on analogous federal precedent when interpreting the TCHRA, this Court will also focus on federal precedents in determining the plaintiffs' claims under the ADA and the TCHRA. *See Rodriguez v. Conagra Grocery Prods. Co.*, 436 F.3d 468, 473-74 (5th Cir. 2006).

Under the ADA, it is unlawful for an employer to discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures[;] the hiring, advancement, or discharge of employees[;] employee compensation[;] job training[;] and other terms, conditions, and privileges of employment." 42 U.S.C.A. § 12112(a) (West 2005). The standard to qualify as disabled is "demanding." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002). Thus, to succeed on their ADA and TCHRA claims, Willi, Prabhakar, and Wilson must show that they were qualified individuals with a disability. *See* 42 U.S.C.A. §§ 12111(8), 12112(a) (West 2005).

A qualified individual is one who can perform the essential functions of her job with or without reasonable accommodation. *See id.* Determining whether someone is a qualified individual requires first identifying whether the individual could perform the essential functions of the job and secondly deciding whether any reasonable accommodation by the employer would enable her to perform those functions. *See Chandler v. City of Dallas*, 2 F.3d 1385, 1393-94 (5th Cir. 1993). Factors to be considered in determining whether a function is essential include the employer's judgment, the consequences if the individual is not required to perform the function, and the work experience of incumbents. *Hershey v. Praxair, Inc.*, 969 F. Supp. 429, 434 (S.D. Tex. 1997). Further, "regular attendance is an essential function of most jobs." *Hypes v. First Commerce Corp.*, 134 F.3d 755, 759 (5th Cir. 1996); *see also Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 683 (5th Cir. 1996).

American argues that because Willi, Prabhakar, and Wilson cannot perform the essential job function of regular attendance, they are not otherwise qualified individuals under the ADA and TCHRA. Willi, Prabhakar, and Wilson assert that based on American's leave policies and medical-exemption program, American cannot assert that attendance is an essential job function

7

and cannot enforce its attendance policies as to Willi, Prabhakar, and Wilson. This argument is not persuasive. American has proffered evidence that, based on Willi's, Prabhakar's, and Wilson's absences, reservation agents were having to wait too long for assistance and Simon was unable to arrange coverage for their shifts on the specialized desk. [Defs.' App. at 128-29, 548, 564, 568.] Willi, Prabhakar, and Wilson do not argue that their absences did not affect the department, they merely assert that American's actions estop them from enforcing any attendance policies. Willi, Prabhakar, and Wilson were shift workers, not managers, and their regular attendance was an essential job function. *See Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996); *Smith v. Lattimore Materials Co.*, 287 F. Supp. 2d 667, 671-72 (E.D. Tex. 2003); *cf. Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 328 (3d Cir. 2003) (although holding employer did not offer evidence that punctuality for a manager was essential job function, court acknowledges that in some circumstances—such as when employer's customer service would be impacted—punctuality is an essential job function). Indeed, the plaintiffs' job descriptions listed reporting to work "in a regular and timely basis" as an "essential job function." [Defs.' App. at 120-21.] Thus, their ADA and TCHRA claims fail because they were not otherwise qualified individuals.

## V. DEFAMATION AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Wilson asserts that Simon—and American, as Simon's employer—defamed her and intentionally caused her emotional distress based on a security alert that was issued after Wilson was fired. Specifically, Wilson claims that Simon, based on two unidentified and threatening voice mails she received after firing Wilson, asked that the security company hired by American watch her car because she believed Wilson might try to damage it. The security company issued


a security alert, which was given to security personnel, as follows:

> NAME:  MERRI WILSON
> FORMER SRO EMPLOYEE
>
> Ms. Wilson is a former SRO Employee.  Her former Supervisor has reason to believe that Ms. Wilson may want to come on the property to damage her vehicle or enter the building.[3]
>
> If Ms. Wilson is found on property, Officers will politely ask her to leave.  If she does not comply, contact the Shift Supervisor.  (Defs.' App. at 610.)

Although an employee of the security company gave a copy of the security alert to a friend of Wilson who then gave it to Wilson and Willi, the security alert was not seen posted on American's property. (Defs.' App. at 78.)

First, Simon argues that portions of Wilson's summary-judgment evidence supporting her defamation claim should be stricken.  Wilson has withdrawn the majority of the disputed evidence.  The remaining objectionable evidence will not be stricken based on the arguments Wilson made in her response to Simon and American's motion to strike.  (Plf.'s Resp. at 2.)  Thus, the motion to strike is DENIED.

To prove defamation, Wilson must show that (1) Simon published a statement, (2) that was defamatory concerning Wilson, (3) while acting with negligence[4] regarding the truth of the statement.  *See WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).  However, the statements must be statements of fact, not of opinion, to be actionable.  *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1970); *El Paso Times, Inc. v. Kerr*, 706 S.W.2d 797, 798 (Tex.

---

[3]American commonly disallowed former employees to return to the property after being fired. (Defs.' App. at 593-94.)

[4]If Wilson were a public official or public figure, Wilson would have to show that Simon acted with actual malice.  *See, e.g., New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *WFAA-TV*, 978 S.W.2d at 571.

App.—El Paso 1986, writ ref'd n.r.e.). Whether a statement is capable of a defamatory meaning is a question of law, which is determined by viewing the statement as a whole and in context. *See Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655-56 (Tex. 1987).

Here, the statement the security company published was merely that Simon "believed" that Wilson "may" try to damage Simon's car or enter the building. These are merely restatements of Simon's unverifiable opinion and are, thus, not actionable. *See, e.g., Columbia Valley Reg'l Med. Ctr. v. Bannert*, 112 S.W.3d 193, 199-200 (Tex. App.—Corpus Christi 2003, no pet.). Further, neither Simon nor American published the statements.[5] A third-party security company published the statements, which is also fatal to Wilson's defamation claim. *See* 20 WILLIAM V. DORSANEO III, TEX. LITIGATION GUIDE § 333.04[3][a] (2007).

Additionally, Wilson's intentional-infliction-of-emotional-distress claim fails. Intentional infliction of emotional distress is a very narrowly construed and rare tort that is available only if a plaintiff has no other recognized theory of redress. In other words, if the crux of a plaintiff's complaint is another tort, intentional infliction of emotional distress is an improper claim. *See Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.2d 438, 447 (Tex. 2004); *see also Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 817 (Tex. 2005) (holding similar post-termination conduct legally insufficient to support intentional-infliction-of-emotional-distress liability). Because the gravamen of Wilson's complaint is defamation, intentional infliction of emotional distress is not cognizable.

---

[5]Simon contacted the facilities coordinator about her concerns after she received the threatening voice mails. The facilities coordinator passed Simon's concerns on to the security company, which issued the security alert to its employees. (Plfs.' App. at 157-61; Defs.' App. at 593-94.)

## VI. CONCLUSION

American is entitled to judgment as a matter of law on the plaintiffs' claims of violations of the FMLA, the ADA, and the TCHRA.  Willi, Prabhakar, and Wilson were not eligible employees under the FMLA, and American's medical-exemption program does not create an FMLA cause of action.  Regarding the ADA and the TCHRA, Willi, Prabhakar, and Wilson cannot perform an essential function of their jobs—regular attendance—which renders them not otherwise qualified individuals entitled to the protections of those laws.  Finally, Wilson's defamation claim fails because the statement was one of opinion and because the statement was not published by Simon.  Her intentional-infliction-of-emotional-distress claim is not cognizable under Texas law.  Thus, American and Simon are entitled to summary judgment.

SIGNED June 7, 2007.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE